## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**INDRIAS S.,**

      **Plaintiff,**

    **v.**

**COMMISSIONER OF
SOCIAL SECURITY,**

      **Defendant.**

**Case No. 2:23-cv-03150**

**Magistrate Judge Kimberly A. Jolson**

### OPINION & ORDER

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. 25). For the following reasons, the Court converts the Motion to Dismiss into a Motion for Summary Judgment and **GRANTS** the motion. The Clerk is **DIRECTED** to enter judgment in favor of Defendant and terminate this case.

## I.      BACKGROUND

On September 27, 2023, Plaintiff, proceeding *pro se*, filed this action seeking judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). (Doc. 1-1). Previously, at an unspecified date prior to 2017, Plaintiff was determined to be disabled and began receiving Supplemental Security Income ("SSI") benefits. (Doc. 25 at 10). In his complaint, Plaintiff alleged that, through no fault of his own, the Social Security Administration ("SSA" or "the Agency") "were/are causing" the overpayment of his SSI benefits and asked for "relief overpayment appeal, [and] for reconsideration and timeline [waiver]." (Doc. 1-1 at 2–3).

In accordance with Southern District of Ohio Local Rule 8.1, the Court ordered the Commissioner to file a certified copy of the administrative record for the matter within sixty days.

(Doc. 9).  In lieu of filing the administrative record, the Commissioner filed a Motion for a More Definite Statement (Doc. 13).  In it, the Commissioner laid out three determinations Plaintiff could be challenging and requested Plaintiff file a more definite statement of which decision his complaint contested.  (*Id.*).  But the Commissioner also alleged that none of the three determinations identified were "final determinations" as defined by 42 U.S.C. § 1383(c) for which Plaintiff could seek judicial review.  (Doc. 13 at 2–5); *see also* 42 U.S.C. § 405(g).  In other words, Plaintiff either failed to exhaust his administrative remedies or was still in the process of appealing the Social Security Administration's decisions.  The Commissioner also notified the Court that Plaintiff had a personal conference scheduled with his local Social Security office on February 14 concerning one of the determinations.  (Doc. 13 at 8).

The Court granted the motion for a more definite statement and ordered the parties to file a status report following the February 14 meeting.  (Docs. 14, 15).  Both parties filed a status report.  Plaintiff represented an ongoing dispute between the parties about the collection of overpayments (Doc. 18), and the Commissioner reiterated his prior position (Doc. 19).  But Plaintiff failed to file a more definite statement in the meantime.  To move this case along, the Court then ordered a deadline for the Commissioner to file a motion to dismiss if he intended on doing so.  (Docs. 20, 24).

On April 4, the Commissioner filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 25).  Plaintiff twice requested more time to respond to the motion, which the Court granted.  (Docs. 26, 27, 28).  On the same day, Plaintiff filed three documents that all address, to some extent, the motion to dismiss.  (Docs. 29, 30, 31).  The Commissioner did not file a reply, and this matter is ripe for review.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(d) provides "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  The Rule further states that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  "When a party is aware that material outside the pleadings has been presented to the court, the party is on notice the Rule 12(b)(6) motion may be treated as a motion for summary judgment."  *Kuenzler v. Pampur*, No. 1:08-CV-783, 2012 WL 2244330, at *3 (S.D. Ohio June 15, 2012) (citing *Wright v. Holbrook*, 794 F.2d 1152, 1156 (6th Cir. 1986)), *report and recommendation adopted*, No. 1:08-CV-783-HJW, 2013 WL 55632 (S.D. Ohio Jan. 3, 2013).  Prior notice of such a conversion is not required unless "one party is likely to be surprised by the proceedings."  *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 393 (6th Cir. 1975).

Here, the Commissioner attached exhibits to the 12(b)(6) motion detailing Plaintiff's history with the Agency.  (*See* Docs. 25-1, 25-2).  Plaintiff was served a copy of the motion to dismiss, so he was aware of the material outside of the pleadings the Commissioner presented to the Court.  And he had ample opportunity to respond with his own arguments and materials.  (*See* Docs. 29, 30, 31).  Therefore, it is appropriate for the Court to treat the Commissioner's motion as a motion for summary judgment.

Under Rule 56, summary judgment is granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriately entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When a defendant shows there is insufficient evidence to support any element of the plaintiff's claim and moves for summary judgment, the burden shifts to the plaintiff to demonstrate a genuine issue for trial on which a reasonable jury could return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Evidence is viewed in the light most favorable to the nonmoving party, meaning that "any direct evidence offered by the [nonmovant] in response to a summary judgment motion must be accepted as true." *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Liberty Lobby*, 477 U.S. at 251–52, 106 S.Ct. 2505, and *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). Ultimately, the Court asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52, 106 S.Ct. 2505.

## III.   DISCUSSION

The question before the Court is whether it is empowered to review any of the three possible decisions by the Agency Plaintiff could be challenging. Simply put, the answer is no.

"It is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . ., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). This sovereign immunity applies equally to the federal government's agencies. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (citing *Loeffler v. Frank*, 486 U.S. 549, 554 (1988)). In creating a waiver of sovereign immunity, Congress "may prescribe the procedures and conditions under which, and the courts in which, judicial review of

4

administrative orders may be had." *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 (1958).

To that end, Congress defined the procedure and conditions under which claimants could seek judicial review in federal court for cases arising under the Social Security Act in 42 U.S.C. § 405(g). In relevant part, this provision provides:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing . . . shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."). Congress further provided:

> No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § Section 405(h). In other words, this Court's jurisdictional basis to review cases arising under the Social Security Act is limited to the procedures and conditions described in Section 405(g). And, as one of those conditions, Section 405(g) "requires exhaustion of the administrative remedies provided under the Act as a jurisdictional prerequisite." *Mathews v. Eldridge*, 424 U.S. 319, 327 (1976); *see also Smith v. Berryhill*, 139 S. Ct. 1765, 1773 (2019) (Section 405(g) "contains two separate elements: first, a 'jurisdictional' requirement that claims be presented to the agency, and second, a waivable ... requirement that the administrative remedies prescribed by the Secretary be exhausted." (internal quotation marks and citation omitted)). Generally,

"[e]xhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992). In this context, administrative exhaustion is a precursor to obtaining a "final decision" by the Commissioner. *Bowen v. City of New York*, 476 U.S. 467, 482 (1986) ("To obtain a final decision from the Secretary a claimant is required to exhaust his administrative remedies . . . .").

"Although § 405(g) limits review to a 'final decision of the Commissioner,' that term is not defined in the statute. Nevertheless, the regulations provide that a claimant must complete a four-step administrative review procedure to obtain a judicially reviewable final decision of a claim for benefits . . . ." *Williams v. Comm'r of Soc. Sec.*, No. 1:14-CV-968, 2015 WL 2172481, at *2 (W.D. Mich. May 8, 2015) (citing *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975) ("The statutory scheme is thus one in which the Secretary may specify such requirements for exhaustion as he deems serve his own interests in effective and efficient administration.")). The four steps include 1) an initial determination; 2) a reconsideration of the initial determination; 3) a hearing before an administrative law judge ("ALJ") on the reconsideration; and 4) an Appeals Council review of the ALJ's decision. 20 C.F.R. §§ 404.900(a)(1)–(4); *see also* §§ 416.1400(a)(1)–(4). When a claimant completes the four steps, the SSA "will have made [a] final decision." 20 C.F.R. § 404.900(a)(5); *see also* § 416.1400(a)(5). Only at that point can a claimant "request judicial review by filing an action in a Federal district court." *Id.* *See Califano v. Sanders*, 430 U.S. 99, 102 (1977) ("The Act and regulations thus create an orderly administrative mechanism, with district court review of the final decision of the Secretary, to assist in the original processing of the more than 7,600,000 claims filed annually with the Administration.").

The Commissioner describes three determinations Plaintiff "may be asking the Court to review: (1) an overpayment of approximately $12,000 due to excess resources in 2017-2019 ('the

first overpayment']; (2) a request in March 2022 that the agency waive recovery of this overpayment ['the waiver request']; and (3) an overpayment of approximately $8,100 due to excess resources in 2021-2022 ('the second overpayment')." (Doc. 25 at 2). But the Commissioner alleges none of these determinations "have developed into final determinations." (*Id.*, citing 20 C.F.R. § 416.1400(a)(5)). The Court considers each determination.

### A. The First Overpayment

In April 2019, Plaintiff received a Notice of Planned Action from the Agency informing him that he was "overpaid supplemental security income (SSI) for 19 months in 2017, 2018, and 2019" because during those months, he had "countable resources worth more than $2,000.00." (Doc. 25 at 3; Doc. 25-1 at 2; 25-2 at 1–2). Then in September 2020, the Agency sent a Notice of Overpayment, informing Plaintiff he had been overpaid by $12,019.50, and he must pay the money back. (Doc. 25-1 at 2–3; 25-2 at 37); *see* 20 C.F.R. § 416.1402(c). Both notices explained how the Agency calculated the overpayment and provided Plaintiff with information about appealing the decision (a reconsideration) and/or requesting a waiver of the repayment. (Doc. 25-2 at 1–42; Doc. 25-1 at 2–4); *see* 20 C.F.R. 416.550(a)–(b) (allowing for waiver of an overpayment when the claimant was without fault in the overpayment and the recovery of the overpayment would either defeat the purpose of Title XVI, be against equity and good conscience, or impede the efficient administration of Title XVI)).

Plaintiff requested a reconsideration in November 2020. (Doc. 25-1 at 3; Doc. 25-2 at 43–46); *see* 20 C.F.R. 416.1409. His case was reviewed, and his request was denied the next month. (Doc. 25-1 at 4; Doc. 25-1 at 47–49). The reconsideration decision again explained that he had more than the $2,000 resource limit and was not entitled to SSI during the nineteen months at issue. (Doc. 25-1 at 4; Doc. 25-1 at 47 (stating Plaintiff had between $11,440.68 and $43,805.98

in his accounts during the months in question)). The reconsideration advised Plaintiff of his right to seek a hearing before an ALJ within sixty days, but Plaintiff did not invoke this right. (Doc. 25-1 at 4; Doc. 25-1 at 47–48).

A determination of "[w]hether an overpayment of benefits must be repaid" is an initial determination subject to administrative and judicial review. 20 C.F.R. § 416.1402(c). Therefore, Plaintiff is subject to the administrative exhaustion process specified in the regulations to receive a "final decision." 20 C.F.R. §§ 404.900(a)(1)–(5); *see also* §§ 416.1400(a)(1)–(5). Because Plaintiff did not complete the third step in the process, a hearing before an ALJ, or the fourth step, an Appeals Council review, he has not received a final decision. *Id.* Thus, this claim is not yet entitled to judicial review. 42 U.S.C. §§ 405(g)–(h).

### B. The Waiver Request

In addition to requesting a reconsideration on the First Overpayment, Plaintiff also requested a waiver in March 2022. (Doc. 25-2 at 50–62). The Agency did not respond to Plaintiff's request until January 2024, due to an administrative error, but a decisionmaker ultimately made a preliminary determination that the waiver could not be approved. (Doc. 25 at 4; Doc. 25-1 at 4–5; Doc. 25-2 at 63–65). Per the regulations, a personal conference to discuss the waiver was set for the next month at a field office. (*Id.*); *see* 20 C.F.R. § 416.557. Plaintiff attended the conference with a non-attorney representative, and he "had the opportunity to review his case file and ask questions regarding the $12019.50 overpayment at issue." (Doc. 25 at 4; 25-1 at 5). On February 20, the field office notified Plaintiff that his request for a waiver had been denied "because the decision-maker concluded that he was at fault in creating the overpayment." (*Id.*; Doc. 25-2 at 66–68).[1] The notice informed Plaintiff that he could request a hearing before an ALJ

---

[1] At one point, the SSA returned $168.20 to Plaintiff, the total amount recovered since the receipt of his waiver request. (Doc. 25 at 5; Doc. 25-1 at 4–5). This action was taken pursuant to a policy to return funds recovered following the

within sixty days of his receipt of the waiver determination. (Doc. 25-1 at 5; Doc. 25-2 at 66–68). This deadline would have been April 22, 2024 (unless Plaintiff can establish he received the notice later than February 20). (Doc. 25 at 11).

As of the date of the Motion to Dismiss, Defendant says Plaintiff had not requested a hearing before an ALJ. (Doc. 25 at 11; Doc. 25-1 at 8–9 (declaration completed on April 3, 2024, stating a systems search revealed Plaintiff did not have pending matters before the Appeals Council or an ALJ)). Plaintiff may dispute this fact. In his response, he says he wants to "contest the [decision] made by nonlawyer who has been hired (ALJs) by the government agencies." (Doc. 29 at 14). This possibly refers to his personal conference at the field office. But even construing Plaintiff's response liberally to allege he received a hearing before an ALJ, that is not enough. He still has not provided records or even alleged that the decision was reviewed by the Appeals Council. So, like the First Overpayment, Plaintiff did not complete the administrative process, and he has not received a final decision. 20 C.F.R. §§ 404.900(a)(1)–(5); *see also* §§ 416.1400(a)(1)–(5). Thus, any claim related to his request for a waiver of overpayment is not yet entitled to judicial review. 42 U.S.C. §§ 405(g)–(h).

### C.     The Second Overpayment

In April 2022, the Agency sent a second Notice of Planned Action, this time informing Plaintiff that it was changing the amount of his SSI benefits for ten months between May 2021 and April 2022 because he had resources worth more than $2,000 during those months. (Doc. 25 at 6; Doc. 25-1 at 6; Doc. 25-2 at 75–94). So, his SSI payment amount should have been $0. (*Id.*). Later that month, Plaintiff received the Notice of Overpayment, informing him that he had been

---

receipt of a waiver request if the waiver was not adjudicated within ten days. (*Id.*); *see* POMS SI 02260.005. After his waiver request was denied, the field office notified Plaintiff that he would be required to pay back the money in addition to the amount he still owned on the overpayment. (Doc. 25-2 at 69–74).

overpaid by $8,128.00 during the ten months in question, and he must pay the money back. (Doc. 25 at 6; Doc. 25-1 at 7; Doc. 25-2 at 95–99). Again, both notices explained how the Agency calculated the overpayment and provided Plaintiff with information about appealing the decision and/or requesting a waiver of the repayment. (Doc. 25 at 6; Doc. 25-1 at 6–7; Doc. 25-2 at 79). There is no record of Plaintiff requesting a reconsideration or waiver of this decision. (Doc. 25-1 at 7).

As with the First Overpayment, Plaintiff is subject to the administrative exhaustion process specified in the regulations to receive a "final decision." 20 C.F.R. §§ 404.900(a)(1)–(5); *see also* §§ 416.1400(a)(1)–(5). Because Plaintiff did not complete the second, third, or fourth steps, he has not received a final decision. *Id.* Thus, this claim also is not yet entitled to judicial review. 42 U.S.C. §§ 405(g)–(h).

***

Plaintiff offers various arguments for why his claims should proceed including: (1) he is not at fault for the overpayments (Doc. 29 at 7; Doc. 31 at 17–19, 21, 26); (2) repayment would mean he cannot pay for his own expenses (Doc. 29 at 9); (3) the Agency was negligent in their dealings with his case (Doc. 31 at 5–6); and (4) the Agency never gave him the opportunity to appeal the overpayment determinations (Doc. 29 at 11; Doc. 31 at 9). However, his first three arguments do not belie the fact that he has yet receive a final decision this Court can review. Indeed, Plaintiff's arguments belong, at least until a final decision is rendered, before the Agency as Plaintiff moves through the remaining steps in the administrative process. And, contrary to Plaintiff's assertion that he did not have the opportunity to exhaust his administrative remedies, the record shows that Plaintiff was provided with information about how to appeal the various decisions. (Doc. 25-1 at 4–7; Doc. 25-2 at 47–48, 66–68, 79). Plaintiff also argues that the motion

10

to dismiss is somehow procedurally defective or an improper litigation tactic.  (Doc. 31 at 1–2).  But this argument is without merit.  Finally, in one of his motions for an extension of time, Plaintiff seeks a "timeline waiver," which potentially refers to his desire to proceed to the next administrative step for each of these determinations out of time.  (*See* Doc. 27 at 2).  But such a request should be directed to the Agency, not the Court.

In sum, none of the three potential determinations by the Agency are entitled to judicial review by the Court.  And so, the relief Plaintiff requests—a reversal of the overpayment—is not relief the Court can grant.  Therefore, the Court must grant the Commissioner's Motion.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. 25).  The Clerk is **DIRECTED** to enter judgment in favor of Defendant and terminate this case.

IT IS SO ORDERED.


Date: June 6, 2024                          /s/Kimberly A. Jolson
                                            KIMBERLY A. JOLSON
                                            UNITED STATES MAGISTRATE JUDGE